Conners v. State.

---

ANDREW CONNERS AND GEORGE WILLIAMS v. STATE.

1. Breaking and entering a *storehouse* in the night-time, with intent to steal, is not, in this state, the crime of burglary, entitling the accused, on his trial, to the service of a panel and twenty peremptory challenges.
2. Such right is permitted to defendants when charged with an offence which, at the common law, constitutes that crime, and not for other criminal breaking and entering.

---

On error to Essex county Quarter Sessions.

The defendants were indicted by the grand jury of the county of Essex, at the September Term, 1882, for breaking and entering a storehouse in the night-time, with intent to

steal. The indictment also contained a count for breaking and entering in the daytime. Upon trial in the Sessions there was a general conviction. Errors are assigned upon the proceedings at the trial, and also on the form of judgment.

Argued at February Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and PARKER.

For the plaintiff in error, *Samuel Kalisch.*

For the state, *Oscar Keen.*

The opinion of the court was delivered by

KNAPP, J. The writ of error in this case brings up the record and conviction of the plaintiffs in error upon an indictment tried in the Court of Quarter Sessions of the county of Essex. The indictment contains two counts: one charging the defendants with breaking and entering, in the night-time, the storehouse of James Traphagan, with intent to steal; the second count charges them with breaking and entering the storehouse of James Traphagan in the daytime, with like intent. Three bills of exception were sealed, by which it appears, first, that the court refused a motion of the plaintiffs in error to postpone the cause, on the ground that the crime charged in the indictment was burglary, and that neither a copy of the indictment nor a list of the jurors had been served upon them two days prior to the day of trial, nor at any time. The second, that each of the defendants claimed the right to twenty peremptory challenges on the trial, and which the court refused; and third, to the refusal of the court to order the jurors to be sworn separately as drawn from the box. The errors are assigned upon the matters contained in the bill of exceptions and to the form in which the judgment was entered. The first error assigned is that the defendants were charged with the crime of burglary, and were entitled to service of a copy of the indictment, with a list of jurors as required by law, two days before the day of trial of said defendants,

and that neither a copy of the indictment nor a list of the jurors was served upon either. Under the sixty-sixth section of the Criminal Procedure act, (*Rev., p.* 279,) it is provided that where any person shall be indicted for any one of several enumerated crimes, in which burglary is included, such person shall have served upon him a copy of the indictment and list of the jury two entire days, at least, before his trial. In the seventy-first section of the same act, (*Rev., p.* 280,) it is provided that every person indicted for either of those crimes shall be admitted peremptorily to challenge twenty of the jury, and no more. Whether or not the court committed error on the trial in the particulars indicated depends upon the correctness of the assumption of the plaintiffs in error that the crime charged against them in this indictment was that of burglary. It is quite certain that the offence charged against them is outside of that crime as understood in the common law. Blackstone defines burglary by giving us Sir Edward Coke's definition of "burglar," (4 *Black. Com.* 223,) that is, " he that by night breaketh and entereth into a mansion-house with intent to commit a felony." In this definition he calls attention to four things necessary to be considered: and first, the time, which must be by night, and not by day, for in the daytime there is no burglary; and second, as to the place, it must be in a mansion-house. He includes breaking open a church within the crime, and to account for that appeals to the reason given by Sir Edward Coke that it is " *domus mansionalis Dei.*" He recognizes it as extending to the breaking of gates or walls of a town in the night, for which he suggests a reason. He concludes that the requisite of its being a mansion-house is only in the burglary of a private house, in which it is indispensably necessary, to form its guilt, that it must be in a mansion or dwelling-house; for, he says, no distant barn, warehouse or the like are under the same privileges nor looked upon as a man's castle of defence, nor is a breaking open of houses wherein no man resides, and which, therefore, for the time being, are not mansion-houses, attended with the same circumstances of midnight terror. And third,

as to the manner of committing burglary, there must both be a breaking and entering to complete it; and fourth, as to the intent, such breaking and entering must be with a felonious intent, otherwise it is only a trespass.

But it is said that in this state the crime of burglary has been enlarged beyond the common law definition so as to bring within its meaning the particular offence here charged, as well as a large number of others having affinities with the graver crime. In some of our sister states, the definition of the crime of burglary has been widely extended, notably so in New York, where it has been divided into several degrees, under one or other of which, every sort of entry, whether with or without breaking, in the daytime or night-time, is included. And something of this sort, in very early times, seems to have been started in this state, for during the proprietary governments, in the capital laws passed in 1668, is found this provision: "If any person within this province shall commit burglary, by breaking open any dwelling-house, storehouse, warehouse, out-house or barn, or any other house whatsoever, he or they so offending shall, for the first offence, be punished by being burnt in the hand with the letter ' T,' and make full satisfaction of the goods stolen or the damages that are done; and for the second time of offending in the like nature, besides the making of restitution, to be branded in the forehead with the letter ' R,' and for the third offence to be put to death as incorrigible." *Leam. & Spicer* 79. Very little, I think, is to be gained from this for our present purposes. The thirtieth section of the Crimes act of 1796, found in Paterson's Revision, enacts that if any person shall, by night, wilfully and maliciously, break and enter any church, meeting-house or dwelling-house, with intent to kill, rob, steal or commit a rape, every such person shall be deemed guilty of a high misdemeanor, and shall be punished by fine and imprisonment for a term not exceeding ten years. The twenty-fifth section of the same act makes the wilful and malicious breaking and entering, in the daytime, of any dwelling-house, warehouse or other building, with like intent, a high misdemeanor, punish-

able by fine not exceeding $500, or imprisonment not exceeding ten years, or both. The thirty-sixth section made it a high misdemeanor to enter, without breaking, any church, meeting-house or place of worship, or dwelling-house, shop or other building, with like intent, punishable by fine not exceeding $300, or imprisonment not exceeding five years, or both. The acts made criminal by the thirtieth section, above cited, mark quite closely the essential characteristics of the crime of burglary at the common law, and perhaps, for that reason, may have been given a place in that section, but the offence, like those described in the other sections mentioned, was made a high misdemeanor. These sections remained unchanged until May, 1820. They provided for breaking and entering in the night-time a church, meeting-house or dwelling-house; for entering, either by day or by night, without breaking, any building whatsoever, and for breaking and entering in the daytime any building whatsoever; but they did not provide punishment for the breaking and entering, in the night time, of any other building than a church, meeting-house or dwelling-house. This defect was remedied by the sixteenth section of a supplement to the act of 1796, passed in May, 1820, which provided that any person breaking and entering, in the night-time, any shop, warehouse, or other building whatsoever, with intent to kill, rob, &c., should be guilty of a high misdemeanor, and punished by fine and imprisonment. *Rev. L.* 1820, *p.* 738.

The thirtieth section of the act of 1796 and the sixteenth section of the act of May, 1820, were combined by the act of February 7th, 1829, which was designed to embody our criminal statute, forming its thirtieth section, and in it the higher penalty was retained. The sections thus united stand unchanged in our Revision as the ninety-third section of the Crimes act. No one would have contended that the sixteenth section of the supplement of 1820 was an attempt to define the crime of burglary, or that the offences therein provided for came within its limits. Subsequent union with the thirtieth section of the act of 1796 would seem to have been

merely for convenience in structure of the act concerning crimes, formed at that time. The older enactment did embrace the essential features of the crime of burglary, the other did not. By this arrangement no change was effected in either enactment. Before their union the offences designated in each are high misdemeanors; the punishment in each was essentially the same—fine and imprisonment. The higher limit of punishment was adopted to reach the graver offence. The crime of burglary has ever been regarded in the law as a most heinous one. At the common law it was a felony, and for a time in this state the punishment was death. Such was the state of the law when the case of *State* v. *Wilson*, *Coxe* 439, was tried. It was about this time that the act was passed providing for the service of a copy of the indictment and the panel on persons accused of those higher grades of crime, among which burglary, by reason of its magnitude, was rightly ranged. The offences of breaking into a wood-house by night, to steal fuel, or into a dove-cote, to take the young from their nests, are offences standing upon a very different plane, and it is scarcely to be believed that it was within the legislative intent that the perpetrators of these offences should, on their trial, be accorded the privileges herein contended for. It would be a novelty, certainly, in our practice; yet to deny it to them is to deny it to the plaintiffs in error, for such a breaking and entry has no fewer of the legal characteristics of burglary than those found in the indictment which is before us. It has been the policy of our law to define and punish almost the entire body of crime by statute. Most of the crimes which were felonies at common law are denominated misdemeanors, and not without reason the view has been entertained that the facts which constitute the common law crime of burglary, when presented as an offence under the statute, do not draw to their trial the incident provisions of sections 66 and 71 of the Criminal Procedure act. The reasons in favor of this view are far more plausible than can be found in support of a theory which would extend the well-defined crime of burglary to embrace offences wanting in the

graver character and essential elements of that crime, and annex to their trial the exceptional rights of a panel service and the full number of challenges to each defendant.

Neither of these views seems to me to be legally correct. It was to the trial of the high crime of burglary that the statute meant to affix these incidents. Our law has not changed that crime from its common law meaning as understood when the provisions were enacted which secured to defendants these exceptional privileges on the trial, and when a defendant is charged with an offence which, at the common law, constitutes that crime, whether the indictment be framed upon the statute or the common law, the sixty-sixth and seventy-first sections apply, and give to such defendant the rights there provided for. But he has not these statutory privileges as his right, when charged with breakings such as are not embraced within the common law crime of burglary.

The objection to the form of the judgment was not much relied on by the plaintiffs in error. It was, at most, a mere irregularity in the entry of the judgment, which the court, at the same time, corrected. Without amendment, it was, I think, substantially correct, and could only be read as a sentence of each for the term of ten years. *State* v. *Johnson*, 5 *Dutcher* 453.

There is no error in the judgment, and it should be affirmed.